```
C7IAARIVH                       Hearing
```

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  KEVIN MARTINEZ RIVERA, ET AL.,

4                Plaintiffs,

5           v.                                11 CV 2567 (NRB)

6  400 RESTAURANT GROUP CORP., ET
   AL.,
7
                  Defendants.
8
   ------------------------------x
9                                            New York, N.Y.
                                             July 18, 2012
10                                            11:40 a.m.

11 Before:

12                HON. NAOMI REICE BUCHWALD,

13                                       District Judge

14                       APPEARANCES

15 FITAPELLI & SCHAFFER, LLP
        Attorneys for Plaintiffs Rivera, et al.
16 BY:  BRIAN SCHAFFER

17 LITTLER MENDELSON
        Attorneys for Defendants 400
18 BY:  GEORGE PAUTA

19

20

21

22

23

24

25

1              (Case called)

2              MR. SCHAFFER:  Brian Schaffer.

3              Good morning.

4              MR. PAUTA:  George Pauta, Littler Mendelson, for all

5     defendants.

6              THE COURT:  All right.  Counsel, you are obviously

7     asking me to approve the settlement that you've reached.

8              So, Mr. Schaffer, tell me why I ought to do so.

9              MR. SCHAFFER:  Your Honor, we believe the settlement

10    of $375,000 for 13 plaintiffs that worked at two restaurants in

11    Manhattan is a very fair and reasonable dispute.  There were

12    many disputed issues in this case.  Plaintiffs and defendants

13    were both represented by experienced counsel.  We engaged arms

14    length negotiations.  We had defendants produce well over five

15    thousand documents including all tip records, all payroll

16    records, schedules.

17             We also had two very lengthy in-person settlement

18    discussions between lawyers at my firm and lawyers of

19    defendants' firm.  We exchanged damages spreadsheets.  My firm

20    personally entered the data from every single paycheck that we

21    received in spreadsheets.  The spreadsheets were well over 50

22    pages in length.  After we exchanged these spreadsheets with

23    defendants, defendants then sent us a five page document with

24    their, essentially, objections to our numbers, their objections

25    regarding the methodology of the calculations.

1          We had disputes regarding how many hours the
2     plaintiffs worked per shift.  We said 10/11 hours.  They said,
3     approximately, eight or nine hours.  There was a dispute
4     whether defendants could claim entitlement to the federal tip
5     credit.  We said they could not claim the tip credit and my
6     client should be paid full minimum wage.  Defendants took the
7     position that they should be paid the reduced minimum wage
8     which was $4.56 or $5 an hour.  Because of the dispute in the
9     hours we allege that our clients were entitled to spread of
10    hours because they worked over ten hours per shift.  The
11    defendant said there was really no spread because they worked
12    under ten hours a shift.
13         We also had a fundamental agreement regarding the
14    alleged tip misappropriation.  We allege that there were people
15    in the tip pool that did not customarily and regularly serve
16    customers and therefore those people should not be tipped.
17    Defendants took the position that their records showed that
18    those individuals did not receive tips.
19         So there are all these disputes that we had amongst
20    each other and we believe that the final resolution is a very
21    substantial number.  The average award per plaintiff is $19,000
22    which we believe is extraordinary in a restaurant case.
23         THE COURT:  Could you recall interest me or estimate
24    what the high number was that you said you were entitled to
25    versus what they said the low number was that the defendants

1   said was appropriate.
2           MR. SCHAFFER:  The defendants in their calculations
3   that they gave us in February of this year had a total of
4   approximately $157,000.  In response to that we gave them our
5   numbers which were approximately $493,000.  Out of that
6   493,000, 256,000 of that were unpaid wages and the rest were
7   federal liquidated damages, New York liquidated damages and New
8   York statutory interests of nine percent.  Disagreements that
9   we had regarding liquidated damages was we were alleging the
10  three year statute under the FLSA.  Defendants contended there
11  was a two year statute because we would not be able to prove
12  willfulness.
13          Defendants also took the position that we wouldn't be
14  able to collect federal liquidated damages and New York
15  liquidated damages simultaneously.  We believe in this district
16  there is a split of authority as to that point.  In addition
17  the defendants alleged that we wouldn't be able to prove
18  willfulness to even be entitled to New York liquidated damages
19  in the first place.  There is also dispute about whether we
20  could recover nine percent statutory interest on top of and
21  simultaneously with liquidated damages.
22          THE COURT:  So the 493,000 dollar figure does that
23  include this double liquidated damages and nine percent
24  interest?
25          MR. SCHAFFER:  Correct.  The number that I

1    presented --
2             THE COURT:  And if you took out the nine percent
3    interest and you took out double liquidated damages where would
4    you get roughly?
5             MR. SCHAFFER:  The wages only were 256,000 without the
6    liquidated damages and penalties.
7             THE COURT:  Okay.  And if you had -- so one round of
8    liquidated damages.  In other words the 256 is -- let's call --
9    it's a bad expression sort of like straight time.  It's time
10   and time and a half for overtime or the spread of hours?
11            MR. SCHAFFER:  The 256 was using our assumptions for
12   all of the unpaid wages --
13            THE COURT:  Right.
14            MR. SCHAFFER:  Without any liquidated damages added.
15            THE COURT:  And if you added liquidated damages one
16   time you double it or not?
17            MR. SCHAFFER:  Well, it doesn't quite work like that.
18            THE COURT:  Okay.  So just tell me the 256 number,
19   plus one level of liquidated damages called federal liquidated
20   damages.
21            MR. SCHAFFER:  Okay.  On 256 the federal liquidated
22   damages was 105,000.
23            THE COURT:  So then your settlement amount exceeds
24   that.
25            MR. SCHAFFER:  Correct.

1           THE COURT:  I think under those circumstances -- I
2    don't think I am sympathetic on the double liquidated damages.
3    I don't think I am sympathetic on interests on top of
4    liquidated damages.  I haven't ever ruled on that but I can
5    tell you what my sympathies or instincts are.  Good news for
6    defense.
7           All right.  And for the 13 individuals the numbers are
8    arrived at down to both dollars and cents.  Is the -- other
9    than the two named plaintiffs is that just in direct
10   correlation to the proof of the hours that they worked?
11          MR. SCHAFFER:  Exactly, your Honor.  We took the final
12   number, minus attorney's fees and costs and we allocated it per
13   plaintiff based on the amount of damages that we believe they
14   were owed in that $493,000 spreadsheet.  So we believe --
15          THE COURT:  So wait a second.  So, actually, something
16   I said before is not quite accurate.  The plaintiffs, the
17   individuals are not getting 375,000.  They're getting 375 minus
18   128.
19          MR. SCHAFFER:  Correct.
20          THE COURT:  So they're getting nine thousand dollars
21   less than the straight wage number?
22          MR. SCHAFFER:  The number to the plaintiffs is
23   247,000.
24          THE COURT:  Right.  Nine thousand dollars less than
25   the 256.

1    MR. SCHAFFER:  Correct.

2    THE COURT:  Why is that?

3    MR. SCHAFFER:  Your Honor, that's a product of the
4  vast disagreements that we had with defense counsel as to the
5  methodology, the hours worked --

6    THE COURT:  But this is a debate you could have with
7  yourself, right?  In other words, that could be between the law
8  firm and your clients.  In other words, you could take nine
9  thousand dollars less out of your fee, right?

10   MR. SCHAFFER:  The way we did it, your Honor, was we
11 believe that we were not sure if we proceeded is if we would be
12 able to recover all of that money because, for example, for the
13 tip misappropriation category we were alleging $80,000 in
14 damages, defendants estimate was essentially zero.  So that was
15 an $80,000 dispute.  Regarding the minimum wage we were off by
16 50 or $60,000 additionally.

17   THE COURT:  Right.  But your firm took a fee of 34
18 percent, right?  Is my math right?

19   MR. SCHAFFER:  Technically yes.

20   THE COURT:  So, and the fee that you took did you have
21 an agreement with your clients to take a certain percentage of
22 the award?

23   MR. SCHAFFER:  Yes.  The agreement that we had with
24 the clients is either one third, plus expenses or a negotiated
25 or court awarded attorney's fee.

1            THE COURT:  So if you took a third it would be
2    125,000.
3            MR. SCHAFFER:  Correct.  125, plus we had,
4    approximately, I believe it's $1,288.85 expenses.
5            THE COURT:  Well, I would personally be more
6    comfortable giving you the third plus your expenses than having
7    you take out of the recovery that your clients are going to get
8    the 35 percent.
9            MR. SCHAFFER:  We have no problem with that, your
10   Honor.
11           THE COURT:  Okay.  Does defense counsel want to add
12   anything?
13           MR. PAUTA:  Not much, your Honor.  Just I think
14   Mr. Schaffer did a good job in accurately describing the case,
15   the disputes between the parties and the way negotiations went.
16           Only just for purposes of the record, defendant of,
17   course would, like to put on the record, one, that it admits no
18   liability in terms of settling this matter that it entered the
19   settlement agreement in order to avoid litigation costs and
20   expenses and the risk involved
21           Secondly, the parties have entered into a written
22   agreement which they've agreed to be bound by and that's it.
23   Thank you.
24           THE COURT:  All right.  As modified, I approve the
25   settlement and I'll expect to get an order from you consistent

1   it with my prior advice.  Thank you very much.
2                        (Adjourned)
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25